# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| DON R. HEILMAN, On Behalf Of Himself ) <br> All Others Similarly Situated, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> XYBERNAUT CORPORATION, ) <br> EDWARD G. NEWMAN, STEVEN A. ) <br> NEWMAN, M.D., THOMAS D. DAVIS, ) <br> BRUCE C. HAYDEN, and GRANT ) <br> THORNTON LLP, ) <br> ) <br> Defendants. ) | Civil Action No. 05-cv-00525 (LMB/LO) <br> Class Action |
| SIMONA ZUCCARELLI, On Behalf Of ) <br> Herself and All Others Similarly Situated, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> XYBERNAUT CORPORATION, ) <br> EDWARD G. NEWMAN, STEVEN A. ) <br> NEWMAN, M.D., THOMAS D. DAVIS, ) <br> BRUCE C. HAYDEN, and GRANT ) <br> THORNTON LLP, ) <br> ) <br> Defendants. ) | Civil Action No. 05-cv-00610 (LMB/BRP) <br> Class Action |

[Captions Continued On Next Page]

**XYBERNAUT INVESTORS GROUP'S MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTION FOR CONSOLIDATION,
APPLICATION FOR APPOINTMENT AS LEAD PLAINTIFF, AND FOR
<u>APPROVAL OF ITS SELECTION OF LEAD AND LIAISON COUNSEL</u>**

| | |
|---|---|
| DEAN LAWTHERS, On Behalf Of Himself and All Others Similarly Situated, ) ) ) | Civil Action No. 05-cv-00617 (TSE/LO) Class Action |
| Plaintiff, ) ) | |
| v. ) ) | |
| XYBERNAUT CORPORATION, EDWARD G. NEWMAN, STEVEN A. NEWMAN, M.D., THOMAS D. DAVIS, BRUCE C. HAYDEN, and GRANT THORNTON LLP, ) ) ) ) ) ) | |
| Defendants. ) ) | |

## I. INTRODUCTION

Presently pending before this Court are at least three related securities class action lawsuits (the "Actions") brought on behalf of all those who have purchased or otherwise acquired Xybernaut Corporation ("Xybernaut" or the "Company") publicly traded securities between May 10, 2002 and April 8, 2005, inclusive (the "Class Period").[1] Each of the Actions allege violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") (15 U.S.C. §§ 78(j)(b) and 78t(a)) and Rule 10b-5 promulgated thereunder (17 C.F.R. § 240.10b-5). All the Actions name as Defendants Xybernaut, the Company's co-founder and former Chief Executive Officer ("CEO") Edward G. Newman ("E. Newman"), his brother and the Company's former President and Chief Operating Officer Steven A. Newman, M.D. ("S. Newman"), the Company's former Chief Financial Officer ("CFO") Thomas D. Davis ("Davis"), his successor as the Company's CFO Bruce C. Hayden ("Hayden"), and the Company's former auditor, Grant Thornton, LLP ("Grant Thornton").

Consolidation is appropriate because the above-captioned actions are substantially identical in that each alleges claims for violations of the Exchange Act and are based upon

---

[1] Seven related actions are currently pending in the United States District Court for the District of Delaware: Aylor v. Xybernaut Corp., et al., No. 05-0222 (SLR); Tal v. Xybernaut Corp., et al., No. 05-0242 (SLR); Fehrenbacher v. Xybernaut Corp., et al., No. 05-0256 (SLR); Jaskol v. Xybernaut Corp., et al., No. 05-0268 (SLR); Wauhop v. Xybernaut Corp., et al., No. 05-0310 (SLR); Donnelly, et al. v. Xybernaut Corp., et al., No. 05-0334 (JJF), and Smith v. Xybernaut Corp., et al., No. 05-0354 (UNA) (collectively, the "Delaware Actions"). In addition, on June 10, 2005, plaintiffs' counsel in the Actions initiated a proceeding before the Judicial Panel on MultiDistrict Litigation to transfer the Delaware Actions to this Court. The Delaware Actions are based upon the same factual allegations as those asserted in the complaints before this Court, although three of the Delaware Actions allege a shorter class period. In addition, one of the Delaware Actions names an additional individual defendant not named in any of the complaints pending before this Court. Simultaneous with this motion, Movant has moved for appointment as lead plaintiff in connection with the Delaware Actions.

similar factual allegations against many of the same defendants. Moreover, Movant is the "most adequate" plaintiff to represent those who purchased or otherwise acquired Xybernaut securities during the Class Period, and has selected and retained Shepherd Finkelman Miller & Shah, LLC ("Shepherd Finkelman") and Schatz & Nobel, P.C. as lead counsel, and Finkelstein, Thompson & Loughran as liaison counsel, law firms that all have extensive experience in prosecuting securities fraud and other complex class actions.

## II.   STATEMENT OF FACTS[2]

Xybernaut is engaged in the research, development, manufacture, marketing and sales of mobile, wearable computing and communication systems, and software and service solutions to enhance product management, asset management, and the accuracy, timeliness and utilization of captured data. During the Class Period, Xybernaut reported quarter after quarter of positive results in its public disclosures and SEC filings, which were attributed to, *inter alia*, sales of its handheld and wearable computer devices and cost-cutting measures. In reaction to these positive statements of increasing revenues, the price of Xybernaut stock traded as high as $2.56 per share during the Class Period (on September 18, 2003). However, the Class was unaware that these statements were materially false and misleading because Xybernaut's purported success was due, in material part, to improper accounting made possible through a serious breakdown in the Company's internal controls.

As alleged in the Complaint, the truth began to emerge on February 17, 2005, when after a significant decline in the price of Xybernaut stock, the Company announced that it knew "of no

---

[2] These facts are based upon the complaint filed in Heilman v. Xybernaut Corp., et al., No. 05-cv-00525 (LMB/LO) (the "Complaint"), which was the first action initiated in this District.

business reason or financial condition that would explain the decline in its stock price." On March 14, 2005, Xybernaut issued a press release stating that it was unable to file its 2004 annual report with the SEC by March 31, 2005. Then, on March 31, 2005, Xybernaut announced that an internal investigation had revealed material weaknesses in the Company's internal controls relating to expense reimbursement, revenue recognition, and the monitoring of business risks and that, as a result, it was unable to predict when it would file its annual report with the SEC. In addition, Xybernaut revealed that on February 1, 2005 – almost two months earlier – it had received a subpoena from the SEC requesting documents.

On April 8, 2005, the last day of the Class Period, the Company disclosed that it had received a letter from its auditor, Grant Thornton, questioning the accuracy and reliability of Xybernaut's accounting and related disclosures, the Company's historical financial statements for fiscal years 2002 and 2003, as well as its interim financial statements for fiscal years 2003 and 2004. As a result, Xybernaut cautioned investors and others from relying on those financial statements. In reaction to this disclosure, the share price of Xybernaut stock, which had already fallen $0.53 per share since the Company's March 14, 2005 announcement, fell another $0.06 per share to close at $0.13 on April 11, 2005, the next trading day.

On April 19, 2005, Xybernaut announced that its internal investigation had been completed, and had uncovered serious wrongdoing by the Company's management that had a material impact on the Company's financial condition. Specifically, Xybernaut disclosed the following results of its investigation: (1) E. Newman "improperly used substantial Company funds for personal expenses and failed properly to substantiate expenses charged to the Company," (2) members of E. Newman's family "were hired and evaluated/not evaluated in

direct violation of the Company's anti-nepotism policy and constituted a 'protected class' of employees;" (3) their employment was never disclosed in SEC filings as required by SEC disclosure regulations; (4) the Company "had failed to adhere to effective disclosure controls governing the Company's public disclosures and the issuance of press releases;" (5) senior management had entered into major transactions in violation of Company internal controls and concealed material financial conditions of these transactions from the Board; (6) "Certain members of senior management failed to disclose to the Audit Committee and the Board written correspondence by the Company's former Chief Financial Officer outlining serious concerns over the breakdown of internal controls;" and (7) E. Newman and his brother, S. Newman, "affirmatively impeded the Audit Committee's investigation in material respects." The Company also announced that it had removed both E. Newman and S. Newman from their positions as CEO and President, respectively, and that Grant Thornton had resigned as Xybernaut's auditor. Xybernaut also repeated its warning that "no reliance should be placed upon certain of the Company's historical financial statements, together with the related audit reports the Company received from its outside auditors."

In addition, on April 25, 2005, Xybernaut disclosed that an investigation had been begun by the U.S. Attorney's Office for the Eastern District of Virginia. The Company also announced that "it continues to face a severe liquidity crisis and possible insolvency" and that there could be "no assurances that the Company will have sufficient cash to meet its financial obligations or fund continuing operations."

## III. ARGUMENT

### A. The Actions Should Be Consolidated For All Purposes.

Consolidation is appropriate where there are actions involving common questions of law or fact. See Fed. R. Civ. P. 42(a). Pending before the Court are three related actions, each of which asserts class claims for violation of the Exchange Act on behalf of those who purchased or otherwise acquired Xybernaut securities during the Class Period. All the Actions name the Company, E. Newman, S. Newman, Davis, Hayden, and Grant Thornton as defendants and involve the same factual and legal issues – namely, whether plaintiffs purchased or otherwise acquired Xybernaut publicly traded securities at prices which were artificially inflated as a result of defendants' false and misleading statements, and whether defendants' acts violate Sections 10(b) and 20(a) of the Exchange Act and SEC Rule 10b-5. Accordingly, consolidation is appropriate here. See, e.g., In re MicroStrategy Inc. Sec. Litig., 110 F.Supp.2d 427, 431 (E.D. Va. 2001) (noting that differences among securities fraud actions with respect to the class period and parties did not "detract from the overwhelming factual and legal similarities among the cases"); In re Cendant Corp. Litig., 182 F.R.D. 476, 479 (D.N.J. 1998) (holding that neither differences in class periods nor measure of damages was sufficient to overcome consolidation of related securities fraud class actions). Moreover, consolidation will result in substantial efficiencies for the Court and the parties. Therefore, the above-captioned actions should be consolidated for all purposes.

**B.     Movant is the Most Adequate Applicant and Should Be Appointed Lead Plaintiff.**

    **1.     Movant Has Complied with the Notice and Filing Provisions of the PSLRA**

The PSLRA establishes a procedure that governs the appointment of a lead plaintiff in "each private action arising under the [Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. §§78u-4(a)(1) and (a)(3)(B)(i). Under this statute, the plaintiff who files the initial action must publish a notice to the class within twenty (20) days of filing the action. This notice must inform class members of their right to file a motion for appointment as lead plaintiff. See 15 U.S.C. §78u-4(a)(3)(A)(i). Within sixty (60) days of publishing the notice, any person or group of persons who are members of the proposed class may apply to the Court to be appointed as lead plaintiff, whether or not they have previously filed a complaint in the action. See 15 U.S.C. §§78u-4(a)(3)(A) and (B).

Here, the notice in this first-filed Action was published on April 15, 2005, following the filing of the first-filed of the Delaware Actions. A copy of the notice is attached as Exhibit "A" to the Declaration of Benjamin J. Weir (the "Weir Dec."). Accordingly, the time period in which class members may move to be appointed lead plaintiff in this case expires on June 14, 2005. See 15 U.S.C. §78u- 4(a)(3)(A) and (B). Movant now timely moves this Court to be appointed Lead Plaintiff on behalf of all members of the class.

The Certifications of the members of the Xybernaut Investors Group – Donald T. Ogle, Jr., Wei Wang, Tom Johnson, Michael Taylor, and Robert A. Schultz – which are collectively attached as Exhibit "B" to the Weir Dec., state that each member has reviewed the allegations of a complaint in the Delaware Actions and each is willing to serve as a representative on behalf of

-6-

the class. In addition, each member of the Xybernaut Investors Group has selected and retained competent counsel to represent them and the class. The firm resume for Shepherd Finkelman, Schatz & Nobel, P.C., and Finkelstein, Thompson & Loughran are collectively attached as Exhibit "C" to the Weir Dec. Accordingly, Movant has satisfied the individual requirements of 15 U.S.C. §78u-4(a)(3)(B) and is entitled to have their application for appointment as lead plaintiff granted, and their selection of Shepherd Finkelman and Schatz & Nobel as co-lead counsel and Finkelstein, Thompson & Loughran as liaison counsel approved by the Court.

### 2. Movant Suffered The Largest Loss Of Any Other Movant.

The PSLRA provides that within ninety (90) days after publication of the notice, the Court shall consider any motion made by a class member and shall appoint as lead plaintiff the member or members of the class that the Court determines to be most capable of adequately representing the interests of class members. See 15 U.S.C. §78u-4(a)(3)(B). In determining the "most adequate plaintiff," the PSLRA provides that:

> [T]he court shall adopt a presumption that the most adequate plaintiff in any private action arising under this [Act] is the person or group of persons that
>
> > (aa) has either filed the complaint or made a motion in response to a notice...;
> >
> > (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
> >
> > (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. §78u-4(a)(3)(B)(iii). See In re Cavanaugh, 306 F.3d 726, 730 (9th Cir. 2002). See also In re MicroStrategy, 110 F.Supp.2d at 433; In re Oxford Health Plans, Inc. Sec. Litig., 182

F.R.D. 42, 43-44 (S.D.N.Y. 1998); <u>Greebel v. FTP Software</u>, 939 F.Supp. 57, 64 (D. Mass. 1996).

During the Class Period, each member of the Xybernaut Investors Group purchased the Company's common stock and suffered losses. Specifically, as reflected in their Certifications attached as Exhibit "B," the members of the Xybernaut Investors Group purchased Xybernaut common stock and thereby suffered damages in the following approximate amounts: Don Ogle – $197,325; Wei Wang – $168,500; Tom Johnson – $117,400; Michael Taylor – $97,510; and Rob Schultz – $87,655.[3] The Certifications of the members of the Xybernaut Investors Group attest to these losses. Thus, the collective loss of the Xybernaut Investors Group is $688,390, demonstrating Movant's significant financial interest in the outcome of this action. To the best of Movants' knowledge, there are no other applicants seeking appointment as lead plaintiff that have a larger financial interest. Therefore, the Xybernaut Investors Group satisfies all of the PSLRA's prerequisites for appointment as Lead Plaintiff in this action and should be appointed Lead Plaintiff pursuant to 15 U.S.C. § 78u-4(a)(3)(B).

    **3.** **No Grounds Exist To Challenge The Xybernaut Investors Group's Adequacy As Lead Plaintiff.**

According to 15 U.S.C. §78u-4(a)(3)(B), in addition to possessing the largest financial interest in the outcome of the litigation, the lead plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." Yet, in selecting a lead

---

[3] Under the Exchange Act, losses are calculated as the difference between the purchase or sale price paid and the mean trading price over a 90-day period beginning after the close of the class period. <u>See</u> 15 U.S.C. § 78u-4(e)(1). Here, the 90-day period has yet to expire, but the "mean" or average closing price for Xybernaut common stock between April 11, 2005 and June 10, 2005, was approximately $0.14 per share.

-8-

plaintiff, it is well established that the Court should limit its inquiry to the typicality and adequacy prongs of Rule 23(a), and defer examination of the remaining requirements until the lead plaintiff moves for class certification. See In re MicroStrategy, 110 F.Supp. 2d at 435 ("[A] district court need only determine (i) whether the movant's 'claims or defenses ... are typical of the claims or defenses of the class' and (ii) whether the movant 'will fairly and adequately protect the interests of the class'") (citation omitted). The Xybernaut Investors Group should be appointed lead plaintiff because it satisfies the typicality and adequacy requirements of Rule 23.

Under Rule 23(a)(3), the claims or defenses of the representative parties must be typical of those of the class. The typicality requirement is satisfied "when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." In re MicroStrategy, 110 F.Supp.2d at 435 (citation omitted). However, "[s]ome factual variations between the class members is not fatal to typicality." Fisher v. Virginia Electric and Power Co., 217 F.R.D. 201, 212 (E.D. Va. 2003) (citation omitted). See Priest v. Zayre Corp., 118 F.R.D. 552, 555 (D. Mass. 1988) ("With respect to typicality under Rule 23(a)(3), plaintiffs need not show substantial identity between their claims and those of absent class members, but need only show that their claims arise from the same course of conduct that gave rise to the claims of the absent [class] members.") (citations omitted).

The Xybernaut Investors Group satisfies this requirement because, just like all other class members, the following facts are true for its members: (1) they purchased Xybernaut common stock during the Class Period; (2) the prices at which those purchases were made were artificially inflated because of Defendants' materially false and misleading statements and/or omissions; and (3) they suffered damages as a result of Defendants' conduct. Thus, the Xybernaut Investors

Group's claims arise out of the same course of events as those of other class members and are typical.

Under Rule 23(a)(4), the representative parties must also "fairly and adequately protect the interests of the class." "[A] person may be an adequate representative of the class where that person (i) does not have interests that are adverse to the interests of the class, (ii) has retained competent counsel, and (iii) is otherwise competent to serve as class representative." In re MicroStrategy, 110 F.Supp.2d at 435-36 (footnote omitted).

Here, the Xybernaut Investors Group, a diverse group of investors with a variety of applicable business experience, is an adequate representative of the class. Don Ogle is the owner of a theatrical contracting business, which provides mobile stages for theatrical and other productions. Wei Wang is a recent graduate of the Schulich School of Business at York University in Toronto, and is about to begin a career in international business. Tom Johnson has over twenty years of experience in the development of confectionery products, and is currently involved in technical sales for confectionery products. Michael Taylor is engaged in consumer products sales, and Rob Schultz is an accountant for a power plant located outside of San Antonio, Texas. Like the class, the members of the Xybernaut Investors Group have sustained substantial damages as a result of their purchase of Xybernaut common stock and would benefit from the same relief. Furthermore, there is no evidence of any antagonism between the members of the Xybernaut Investors Group and the class. In addition, as shown below, Movant's proposed lead counsel are highly qualified, experienced and able to conduct this complex litigation in a professional manner. Having suffered significant losses, the Xybernaut Investors Group will also be motivated to vigorously prosecute this action. Thus, the Xybernaut Investors Group satisfies

the typicality and adequacy requirements of Rule 23 for the purposes of this motion.

**B.   The Court Should Approve the Xybernaut Investors Group's Choice of Counsel.**

Pursuant to 15 U.S.C. §78u-4(a)(3)(B)(v), Movant shall, subject to Court approval, select and retain counsel to represent the class they seek to represent. The Xybernaut Investors Group has selected Shepherd Finkelman and Schatz & Nobel to serve as co-lead counsel in this case. As demonstrated by their resumes (attached as Exhibit "C" to the Weir Dec.), both Shepherd Finkelman and Schatz & Nobel, as well as the proposed liaison counsel, Finkelstein, Thompson & Loughran, have substantial experience in the prosecution of shareholder and securities class actions, as well as other complex litigation, and have the resources necessary to efficiently conduct this litigation. Accordingly, the Court should approve the Xybernaut Investors Group's selection of co-lead counsel.

IV. **CONCLUSION**

For all the foregoing reasons, Movant respectfully requests that the Court: (i) consolidate these actions; (ii) appoint the Xybernaut Investors Group as lead plaintiff in this consolidated action; and (iii) approve Movant's selection of Shepherd, Finkelman, Miller & Shah, LLC and Schatz & Nobel, P.C., to serve as lead counsel, and Finkelstein, Thompson & Loughran to serve as liaison counsel.

June 14, 2005                     FINKELSTEIN THOMPSON & LOUGHRAN

*/s/ Benjamin J. Weir*
Benjamin J. Weir (VA Bar No. 68769)
The Duvall Foundry
1050 30th Street, N.W.
Washington, DC 20007
(202) 337-8000
(202) 337-8090 (fax)

SHEPHERD, FINKELMAN, MILLER & SHAH, LLC
James E. Miller
Patrick A. Klingman
Karen M. Leser
65 Main Street
Chester, Connecticut 06412
(860) 526-1100
(860) 526-1120 (fax)

SCHATZ & NOBEL, P.C.
Andrew M. Schatz
Jeffrey S. Nobel
One Corporate Center
20 Church Street
Hartford, Connecticut 06103
(860) 493-6292
(860) 493-6290 (fax)